Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street, Suite 401 C
Boise, Idaho 83702
Tel.: (208) 484-2253
d@fergusonlawmediation.com

Craig Harrison Durham, ISB No. 6428
Durham Law Office, PLLC
910 W. Main St., Suite 328
Boise, ID 83702
Tel.: (208) 345-5183
craig@chdlawoffice.com

Shannon P. Minter
Christopher F. Stoll
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
sminter@nclrights.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MADELYNN LEE TAYLOR,<br><br>                    Plaintiff,<br><br>   v.<br><br>DAVID E. BRASUELL, as Administrator of the Idaho Division of Veterans Services, in his official capacity,<br><br>                    Defendant. | Case No.<br><br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF** |

## I.      INTRODUCTION

1.      Plaintiff Madelynn Lee Taylor ("Ms. Taylor" or "Plaintiff") brings this action for a permanent injunction and damages. She requests that the Court issue an injunction directing Defendant David E. Brasuell, as Administrator of the Idaho Division of Veterans Services, in his official capacity, approve her Application for Pre-Registration to be interred along with her deceased spouse at the Idaho State Veterans Cemetery.

2.      Ms. Taylor is a 74 year old veteran of the United States Navy. She married her longtime partner, Ms. Jean Mixner, in California in 2008.  Attached as Exhibit "A" is a copy of their marriage certificate. After a long and painful struggle with emphysema, Ms. Mixner died in 2012, while the couple were living in Arizona.  Following Ms. Mixner's death, Ms. Taylor returned to Idaho, which had been her home for most of her career and where the couple had lived together for much of their retirement.  Ms. Taylor brought her spouse's cremated ashes with her to Idaho, as it was Ms. Mixner's request and desire, as well as Ms. Taylor's intention, to have their ashes co-mingled upon Ms. Taylor's death.

3.      Since her return to Idaho, Ms. Taylor has dealt with several health challenges. She suffers from cardiovascular disease, and recently underwent surgery at a Veteran's Administration hospital to replace a stent in her neck. She also has chronic obstructive pulmonary disease, a serious respiratory condition. Her ability to walk more than short distances is limited, due to an injury to her left leg up to her knee, and requires her to use a cane, walker or motorized scooter for mobility.

4.      In December 2013, Ms. Taylor went to the Idaho State Veterans Cemetery in Boise to make advance arrangements for interment of her own ashes, as well as those of her spouse, Ms. Mixner, together in a single stone columbarium. The Idaho State Veterans Cemetery and the

2

cemetery routinely allows veterans to be buried with their spouses. Despite Ms. Taylor's possession of valid honorable discharge, attached as Exhibit "B" and a valid marriage certificate, (Exhibit "A"), cemetery staff refused to provide the requested reservation for Ms. Mixner's ashes to be interred along with Ms. Taylor's. The sole reason for this refusal was Idaho's laws prohibiting the recognition of marriages of same-sex couples lawfully entered into in other jurisdictions. A copy of Ms. Taylor's Application for Pre-Registration is attached as Exhibit "C". The Idaho Division of Veterans Services denial of her application letter is attached as Exhibit "D".

5.      Under the Idaho Constitution, "a marriage between a man and a woman is the only domestic legal union that shall be valid or recognized in this state." Idaho Const. art. III, § 28. This provision precludes recognition of a same-sex couple's existing marriage.  In the recent decision of *Latta v. Otter*, No. 1:13-cv-00482, 2014 WL 1909999, __F. Supp.2d___(D. Idaho May 13, 2014), the Court held Idaho's same sex marriage ban unconstitutional, as a violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

6.       Idaho's refusal to respect Ms. Taylor's marriage denies her a "dignity and status of immense import." *United States v. Windsor*, 133 S. Ct. 2675, 2692 (2013).  Idaho's refusal to recognize her same sex marriage "tells ….all the world that their [relationship is] unworthy" of recognition. *Id*. at 2694. Indeed, Idaho law goes so far as to deny her as a military veteran the basic dignity and respect of being interred alongside her lawful spouse in the Idaho State Veterans Cemetery.

7.      Idaho's refusal to respect Plaintiff's marriage violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Idaho law deprives Plaintiff as the surviving spouse her constitutionally protected liberty interest in her

3

marriage. Idaho's anti-recognition laws further burden the exercise of her fundamental rights and discriminate against her. Idaho's laws prohibiting the recognition of her same-sex marriage is subject to heightened scrutiny because they burden Ms. Taylor's fundamental constitutional rights and because they discriminate based on sex and sexual orientation. *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471 (9th Cir. 2014). The challenged Idaho statutes and constitutional provision cannot survive any level of constitutional scrutiny, however, because they do not rationally further any legitimate government interest, but serve only to injure and humiliate Plaintiff as the surviving spouse of a married same-sex couple.

8.     Ms. Taylor brings this suit pursuant to 42 U.S.C. § 1983 for injunctive relief against the Defendant. Specifically, Ms. Taylor seeks a permanent injunction directing Defendant to approve her Pre-registration Application to be interred upon her death with her deceased spouse, Ms. Mixner, and to direct him to approve, upon Ms. Taylor's upon death, her interment, together with her spouse at the Idaho State Veterans Cemetery. Ms. Taylor also seeks monetary damages for her injuries and expenses.

## II.     PARTIES

### A.     The Plaintiff

9.     Madelynn Lee Taylor was born in 1940 and raised in a large family in Missouri and California.  At age 18, she joined the United States Navy, where she was first trained in electronics maintenance and later became a trainer in aviation physiology, teaching servicemembers about the physiological effects of flight.  After six years in the Navy, a fellow servicemember told investigators that Ms. Taylor was a lesbian.  Under the military policy concerning gay and lesbian servicemembers that was in effect in the early 1960s, she was given the choice of facing a court martial or agreeing to an immediate administrative discharge.  Ms. Taylor agreed to the

administrative discharge, to avoid a court martial. In 1979 this injustice was corrected to reflect Ms. Taylor's honorable discharge, with full military benefits. (See Exhibit "B").

10.     Ms. Taylor then began a career in the private sector, first working at Hewlett-Packard Co. in California writing technical manuals, and later moving to Idaho, where she spent the remaining 25 years of her career working for Mountain States Telephone Company.  Ms. Taylor owned three homes and farms in Idaho over the years and raised calves on her land.  She volunteered as an emergency medical technician, for the Kuna and Meridian, Idaho fire departments.  She also became a certified nursing assistant, and worked part time in several nursing homes. Idaho became her home, and she had four siblings and many friends in the community.

11.     In 1995, as she was nearing retirement, Ms. Taylor's last assignment with Mountain States Telephone took her to Minnesota.  When she completed her last project, she stopped in Kansas City, Missouri, to visit her sister-in-law as she drove back to Boise to begin her retirement. While in Kansas City, Ms. Taylor met Jean Mixner on a blind date arranged by Ms. Taylor's sister-in-law.  Ms. Taylor and Ms. Mixner were drawn to each other immediately, and when Ms. Taylor returned to Boise, the two spoke by telephone frequently.  Soon thereafter, Ms. Mixner, who was also retired, moved to Boise to be with Ms. Taylor.  The couple married in a religious (but not legally binding) ceremony in 1995 in Oregon.

12.     Ms. Taylor and Ms. Mixner lived together in Nampa and built an addition to their home together.  Ms. Taylor continued to work on the house, and Ms. Mixner ran a support group for transgender people and was one of the clergy at the Metropolitan Community Church in Boise. The couple moved to North Carolina for a time to care for Ms. Mixner's mother, and later bought a recreational vehicle in which they traveled the country together for six years.

13.     In 2008, Ms. Mixner and Ms. Taylor legally married in California. (See Exhibit "A").  Shortly thereafter, Ms. Mixner became seriously ill with emphysema.  The couple lived in Arizona, as Ms. Mixner's illness progressed.  Ms. Mixner passed away in 2012.

14.     Ms. Taylor moved back to Idaho to be near family and friends.  In December 2013, she drove to the Idaho State Veterans Cemetery to make arrangements for her own ashes and those of Ms. Mixner to be interred together in a granite columbarium at the cemetery.  Veterans are permitted to be buried or interred in the Idaho State Veterans Cemetery along with their spouses, and the cemetery routinely allows such burial or interment for opposite-sex married couples. When employees at the cemetery learned that Ms. Taylor's spouse was also a woman, they immediately declined to approve Ms. Taylor's request for Ms. Mixner's ashes to be interred at the cemetery. Ms. Taylor later returned to the cemetery to speak with a supervisor, but again was told that Ms. Mixner could not be interred at the Idaho State Veterans Cemetery because Idaho law does not recognize marriage between spouses of the same sex. On June 4, 2014, Mr. James Earp, the Director of the Idaho State Veterans Cemetery, wrote to notify Ms. Taylor that her Pre-registration Application for her interment, along with her spouse, Ms. Mixner, was rejected because the State of Idaho does not recognize her marriage as valid.  Specifically he noted that article III, Section 28 of the Idaho Constitution, and Idaho Code § 32-201 provide that "[a] marriage between a man and a woman is the only domestic union that shall be valid or recognized in this state". (See Exhibit "D").

**B.     The Defendant**

15.     Defendant David E. Brasuell ("Defendant") is Administrator of the Idaho Division of Veterans Services.   Pursuant to I.C. § 65-202, Defendant is empowered to "[o]versee the management and operation of the veterans homes in the state and the state veterans cemetery, and

provide care to veterans of the armed forces of the United States under such rules as the administrator may, from time to time, adopt." Defendant is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint.  On information and belief, Defendant's official residence and/or workplace is in Ada County, Idaho, within the District of Idaho. He is sued in his official capacity.

16.     Defendant is responsible for enforcing, within the Division of Veterans Services, Idaho's laws refusing to recognize the valid out-of-state marriages of same-sex couples. Defendant, and those subject to his supervision and control, have caused the harms alleged herein, and will continue to injure Ms. Taylor if not enjoined. The relief requested herein is sought against Defendant and all persons under his supervision and control, including all officers, employees and agents of the Idaho Division of Veterans Services.

## III.   JURISDICTION AND VENUE

17.     Plaintiff brings this action under 42 U.S.C. § 1983 to redress the deprivation of her rights under color of state law of rights secured by the United States Constitution.

18.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has personal jurisdiction over Plaintiff and Defendant.

19.     Venue is proper in this Court under 28 U.S.C. § 1391 (b)(1) and (2) because the Defendant resides and/or works in this District and resides in this State, and because a substantial part of the acts and events giving rise to this Complaint occurred in this District.

20.     This Court has authority to enter permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## IV.   STATEMENT OF FACTS

**Idaho's Laws Barring Same-Sex Couples from Marriage and Refusing to Recognize**
**Plaintiff's Valid Out-of-State Marriages**

21.     Historically, Idaho has not questioned the legitimacy of marriages from other states that are valid under the other state's laws. From territorial days until 1996, Idaho recognized all "foreign" marriages if they were lawful under the laws of the other jurisdiction. 1867, p. 71, § 5; R.S. § 2428; I.C. § 32-209.

22.     In 1996, however, in response to the mere possibility that some states might permit same-sex couples to marry although none had yet done so, the Idaho legislature amended Idaho Code section 32-209 to create an exception to the longstanding rule that Idaho generally respects marriages that are validly entered into in other states only for the legal marriages of same-sex couples. That statute now provides:

> All marriages contracted without this state, which would be valid by the laws of the state or country in which the same were contracted, are valid in this state, unless they violate the public policy of this state. Marriages that violate the public policy of this state include, but are not limited to, same-sex marriages, and marriages entered into under the laws of another state or country with the intent to evade the prohibitions of the marriage laws of this state.

23.     Likewise, I.C. § 32-201 provides:

> Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by the issuance of a license and a solemnization as authorized and provided by law. Marriage created by a mutual assumption of marital rights, duties or obligations shall not be recognized as a lawful marriage.

24.     In 2006, although Idaho's statutes already denied recognition to the marriages of same-sex couples who legally married out of state, Idaho amended its Constitution to do so as well. Article III, section 28 provides:

A marriage between a man and a woman is the only domestic legal union
that shall be valid or recognized in this state.

### Harms Caused by Idaho's Laws Refusing to Plaintiff's Valid Out-of-State Marriage

25.     Ms. Taylor is a resident of Idaho who has experienced the same joys and challenges

of family life as her neighbors, co-workers, and other community members whose legal marriages

are respected under Idaho law. She has had a successful and productive career, served her country

honorably in the military, and contributed to her community.  Nevertheless, Idaho denies her

marriage the same legal shelter, dignity, and respect afforded by Idaho to other Idaho married

couples, and widows and widowers. Idaho's refusal to respect Ms. Taylor's subjects her to an

inferior "second class" status as an Idahoan relative to the rest of the community. It denies her even

the basic dignity of having her burial wishes, and the wishes of her spouse, respected by the State

of Idaho, solely because of its refusal to recognize their lawful marriage. Idaho has denied Ms.

Taylor the comfort and dignity of knowing that she will be able to honor her promise to her spouse.

Namely, that upon Ms. Taylor's death, their remains will be comingled for burial, so that they may

rest together in peace. This has caused, and continues to cause Ms. Taylor great pain and anguish.

26.     Further, as a proud veteran of the United States Navy, and an Idaho resident, Ms.

Taylor is entitled to be buried in the Idaho State Veterans Cemetery in Boise, Idaho, along with her

spouse, just as are other honorably discharged Idaho veterans. Idaho's refusal to recognize Ms.

Taylor's marriage and treatment of her spouse as a legal stranger is disrespectful and deeply

offensive.

## V.      CLAIMS FOR RELIEF

**First Claim for Relief:  Idaho's Failure to Recognize The Marriage of Plaintiff
Deprives her of Due Process of Law in Violation of the Fourteenth Amendment to the
United States Constitution**

9

27.     Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs of this complaint as though fully set forth herein.

28.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

29.     The Idaho Constitution, article III, section 28, Idaho Code section 32-209, and all other sources of state law that prohibit the state and its officers from respecting the marriage of Plaintiff violates the due process guarantee of the Fourteenth Amendment.

30.     The right to marry the unique person of one's choice and to direct the course of one's life without undue government restriction is one of the fundamental rights protected by the Due Process Clause of the Fourteenth Amendment.

31.     The Due Process Clause also protects choices central to personal dignity, privacy, and autonomy, including each individual's fundamental liberty interests in family integrity and intimate association. Defendant's actions to enforce the marriage recognition ban directly and impermissibly infringe upon Plaintiff's deeply intimate, personal, and private decisions regarding family life, and preclude her from obtaining full liberty, dignity, privacy, and security for herself and her deceased spouse.

32.     Plaintiff was lawfully married to her late spouse Jean Mixner in California in 2008.

33.     When a couple validly marries in a state, numerous rights, responsibilities, benefits, privileges, and protections attach to that status under state and federal law.

34.     Once a couple enters into a valid marriage in a state, the couple has a liberty interest in their marital status that is protected by the Due Process Clauses of the Fifth and Fourteenth Amendment, regardless of where the married couple chooses to live within the United States.

35.     Plaintiff, as the surviving spouse of a lawful marriage, has a protected liberty interest in her marriage and in the comprehensive protections and obligations that marriage provides.

36.     By operation of Idaho Code section 32-209, and article III, section 28 of the Idaho Constitution, Plaintiff's lawful marriage is treated as non-existent and without any legal effect or status in Idaho.  Idaho law effectively strips Plaintiff of a valuable and fundamental legal status was conferred by a sister state and deems Plaintiff a legal stranger to her deceased spouse.

37.     Idaho's refusal to recognize Plaintiff's valid out-of-state marriage impermissibly deprives her of her fundamental liberty and property interests in her marriage and the comprehensive protections afforded by marriage in violation of the Fourteenth Amendment's Due Process Clause.

38.     Idaho's refusal to recognize Plaintiff's valid out-of-state marriage also impermissibly burdens and interferes with her exercise of the fundamental right to marry in violation of the Fourteenth Amendment's Due Process Clause.

39.     Defendant cannot satisfy the requirements of the Due Process Clause because Idaho's refusal to respect the Plaintiff's valid marriage is not rationally related to any legitimate governmental interest and thus cannot survive even rational basis review, much less the heightened level of scrutiny that applies to deprivation of the fundamental right to marry and interference with fundamental interests in liberty, dignity, privacy, autonomy, family integrity, and intimate association.

40.     Defendant's deprivation of Plaintiff's constitutional rights under color of state law violates 42 U.S.C. § 1983.

41.     Plaintiff has no adequate remedy at law to redress the irreparable wrongs alleged in this Complaint, which are of a continuing nature.

42.     Plaintiff is entitled to permanent injunctive relief on this basis.

**Second Claim For Relief:  Idaho's Failure to Recognize the Plaintiff's Denies Her Equal Protection of the Laws in Violation of the Fourteenth Amendment to the United States Constitution**

43.     Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

44.     Plaintiff states this cause of action against Defendant in his official capacity for purposes of seeking injunctive relief.

45.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

46.     Idaho has a long history of respecting marriages that were validly entered into in other states, and affording those marriages all of the rights and privileges of an Idaho marriage. But in 1996, and again in 2006, it singled out the legal marriages of same-sex couples in order to exclude them from recognition and to deny the spouses in such marriages any of the rights, protections, and responsibilities of marriage.

47.     Idaho Constitution, article III, section 28 and Idaho Code section 32-209 and all other sources of state law that prohibit recognition of the valid out-of-state marriages of same-sex couples violate the equal protection guarantee of the Fourteenth Amendment both facially and as applied to Plaintiff. The conduct of Defendant in enforcing these laws violates the right of Plaintiff to equal protection by discriminating impermissibly on the basis of her sexual orientation and sex.

48.     Idaho's refusal to respect the marriages of Plaintiff, and Defendant's actions to enforce that exclusion, deny her equal dignity and respect. These laws brand her as second-class citizens through government-imposed stigma and foster private bias and discrimination, by instructing that Plaintiff's marriage is less worthy than other Idaho marriages. Defendant's actions reflect moral disapproval and animus toward same-sex couples.

49.     While the states have traditionally had the authority to regulate marriage, that authority "must respect the constitutional rights of persons," *see Windsor*, 133 S. Ct. at 2691, and it is "subject to constitutional guarantees," *see id*.

50.     The principal purpose and effect of Idaho's non-recognition laws "is to identify a subset of state-sanctioned marriages and make them unequal." *Windsor*, 133 S. Ct. at 2694.  These laws "impose a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages made lawful by the unquestioned authority of [other] States."  *Id.* at 2693.

51.     Idaho's laws which refuse to recognize Plaintiff's marriage are subject to heightened scrutiny. But even under rational basis review, a purpose to harm a minority class of persons cannot justify disparate treatment of members of that group, as this is not a legitimate governmental interest. *Romer v. Evans*, 517 U.S. 620, 635 (1996); *Windsor*, 133 S. Ct. at 2693

**Injunctive Relief**

52.     Plaintiff incorporates by reference and re-alleges all of the preceding paragraphs of this Complaint as though fully set forth herein.

53.     This case presents an actual controversy because Defendant's present and ongoing violation of Plaintiff's rights to due process and equal protection subjects Plaintiff to serious and immediate harms, warranting the issuance of a permanent injunction pursuant to Federal Rule of Civil Procedure 65.

13

54.     Plaintiff seeks injunctive relief to protect her constitutional rights and avoid the injuries described above. A favorable decision enjoining Defendant would redress and prevent the irreparable injuries to Plaintiff, for which Plaintiff has no adequate remedy at law or in equity.

**Monetary Relief**

55.     Plaintiff seeks monetary damages for her injuries and expenses relating to the Defendant's denial of her Application for Pre-Registration to be interred along with her deceased spouse at the Idaho State Veterans Cemetery.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A. Directing Defendant David E. Brasuell, as Administrator of the Idaho Division of Veterans Services, in his official capacity, to approve her Application for Pre-Registration to be interred along with her deceased spouse at the Idaho State Veterans Cemetery, and to approve Ms. Taylor's interment upon her death together with her spouse;

B. Awarding Plaintiff monetary damages for her injuries and expenses;

C. Awarding Plaintiff her costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

D. Granting such other and further relief as the Court deems just and proper.

E. The injunctive relief requested in this action is sought against Defendant; against Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with Defendant, or under Defendant's supervision, direction, or control.

DATED:  July 7, 2014

Respectfully submitted,

_____/s/_____
Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street, Suite 401 C
Boise, Idaho 83702
Tel.: (208) 484-2253
d@fergusonlawmediation.com


Craig Harrison Durham, ISB No. 6428
Durham Law Office, PLLC
910 W. Main Street, Suite 328
Boise, ID 83702
Tel.: (208) 345-5183
craig@chdlawoffice.com

National Center for Lesbian Rights
Shannon P. Minter*
Christopher F. Stoll*
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
sminter@nclrights.org
cstoll@nclrights.org


Attorneys for Plaintiffs
* Motions for Admission Pro Hac Vice Pending