UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MADELYNN LEE TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>DAVID E. BRASUELL, as Administrator of the Idaho Division of Veterans Services, in his official capacity,<br><br>Defendant. | Case No. 1:14-cv-00273-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION TO DISMISS**<br>**(Docket No. 18)**<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>**(Docket No. 19)** |

Now pending before the Court are (1) Defendant's Motion to Dismiss (Docket No. 18), and (2) Plaintiff's Motion for Summary Judgment (Docket No. 19). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

1. Plaintiff Madelynn Lee Taylor is a 74 year-old veteran of the United States Navy. *See* Am. Compl., ¶ 2 (Docket No. 13).

2. In 1995, Ms. Taylor married Jean Mixner in a religious (but not legally binding) ceremony in Oregon. *See id.* at ¶ 11. In 2008, Ms. Taylor and Ms. Mixner legally married in California. *See id.* at ¶ 13; *see also* Ex. A to Am. Compl. (Docket No. 13, Att. 1).

---

[1] This section discusses not only the instant action's backdrop, but also two other legal proceedings taking place over the same period of time – namely, *Latta v. Otter* and *Obergefell v. Hodges*. These proceedings sometimes overlap, potentially contributing to a disjointed landscape that creates the setting for this Memorandum Decision and Order. To help reduce any confusion that might stem from the overlapping nature of the cases, this section is organized numerically, in chronological format.

**MEMORANDUM DECISION AND ORDER - 1**

3.      In 2012, Ms. Mixner passed away.  *See* Am. Compl., ¶ 13 (Docket No. 13).

4.      In December 2013, Ms. Taylor drove to the Idaho State Veterans Cemetery in Boise, Idaho to make arrangements to have her own ashes interred with Ms. Mixner's ashes in a granite columbarium there.  *See id*. at ¶¶ 4 & 14.  According to Ms. Taylor, "[v]eterans are permitted to be buried or interred in the Idaho State Veterans Cemetery along with their spouses, and the Cemetery routinely allows such burial or interment for opposite-sex married couples."  *See id*.

5.      On May 12, 2014, Ms. Taylor submitted an "Application for Pre-Registration" ("Application") to the Idaho Division of Veterans Services ("Veterans Services").  *See* Ex. C to Am. Compl. (Docket No. 13, Att. 3).  The Application requested the "pre-registration" of both Ms. Taylor (as a veteran) and Ms. Mixner (as Ms. Taylor's deceased spouse), with cremation listed as the "interment type."  *See id*.

6.      On June 4, 2014, Veterans Services granted, in part, and denied, in part, Ms. Taylor's Application.  James Earp, Director of the Idaho State Veterans Cemetery, sent a letter to Ms. Taylor in which he said:

> Thank you very much for your Pre-registration Application for interment at the Idaho State Veterans Cemetery.  We are pleased to inform you that you meet the eligibility requirements for interment in the Cemetery.  The application for interment you submitted is hereby approved, in part, as it relates to interment benefits for yourself. . . . .
>
> Your application, however, is denied in part as it relates to interment of the individual you listed in the spousal pre-registration section, Ms. Jean Francis Mixner.  Your application indicates that both you and Ms. Mixner are female.  In accordance with administrative rules governing the Cemetery, a pre-registration application for interment of the spouse of an eligible veteran must be accompanied by a valid record (certificate) of marriage between an individual and the veteran.  Although your application is accompanied by a certificate of marriage to Ms. Mixner issued by the State of California, Idaho

**MEMORANDUM DECISION AND ORDER - 2**

law does not permit the Cemetery to recognize such as valid. Specifically, the Idaho Constitution at Article III, Section 28 provides that "[a] marriage between a man and a woman is the only domestic legal union that shall be valid or recognized in this state." Similarly, the Cemetery is limited by section 32-209, Idaho Code which indicates that same-sex marriages entered into under the law of another state violate the public policy in Idaho and are not valid in Idaho. The Cemetery is required to comply with current Idaho law; and accordingly, unable to provide interment benefits to Ms. Mixner at this time.

The Cemetery is aware that legal proceedings are currently pending which address the validity of Idaho's laws regarding what constitutes a valid marriage in the state.[2]   The outcome of such proceedings may directly affect the eligibility for benefits of Ms. Mixner and alter our determination of your application as indicated above as it relates to her. If that occurs, the Cemetery will reprocess your application for benefits as it relates to Ms. Mixner – you need not provide us with a new application at that time. As soon as any legal proceedings involving that matter are finally and sufficiently concluded, the Cemetery will notify you of any change in its decision as it relates to interment benefits for Ms. Mixner.

As it relates to your own eligibility for interment in the Cemetery, please be advised of the information that follows. As you know, pre-registration allows Veterans to establish in advance, their eligibility for interment and is intended to simplify and assist the next-of-kin at the time of death. Therefore, please note that this confirmation of your eligibility does not constitute a contractual agreement obligating you to interment in the Cemetery, nor does it reserve a specific site. In addition, pre-registration is not intended to override decisions

---

2   On May 13, 2014 (one day after Ms. Taylor submitted her Application), Chief U.S. Magistrate Judge, Candy Wagahoff Dale, declared "Idaho's Marriage Laws" (identified as "the Constitution and laws of the State of Idaho") unconstitutional under the Fourteenth Amendment of the United States Constitution and permanently enjoined the State of Idaho from enforcing its laws to the extent the laws would prohibit same-sex marriage in Idaho or not recognize same-sex marriages celebrated outside Idaho. *See Latta v. Otter*, 19 F. Supp. 3d 1054, 1060 (D. Idaho 2014) ("Idaho's Marriage Laws deny its gay and lesbian citizens the fundamental right to marry and relegate their families to a stigmatized, second-class status without sufficient reason for doing so. These laws do not withstand any applicable level of constitutional scrutiny."). On May 14, 2014, Judge Dale denied the *Latta* defendants' motion for a stay pending appeal and entered judgment in the *Latta* plaintiffs' favor, consistent with its May 13, 2014 decision. The *Latta* defendants appealed the decision to the United States Court of Appeals for the Ninth Circuit and, on May 20, 2014, the Ninth Circuit granted a stay pending appeal. Presumably, it is this state of events to which Mr. Earp refers to in his June 4, 2014 letter.

**MEMORANDUM DECISION AND ORDER - 3**

made as a result of subsequent estate planning, authorization given to next-of-kin, or various contractual agreements addressing interment.  If you have any questions, please feel free to call the Cemetery Office at (208) 780-1340.

Thank you for your interest in the Idaho State Veterans Cemetery.  We are grateful for your support and most appreciative that we are able to pay tribute to our Veterans by providing a final resting place of honor.

Ex. D to Am. Compl. (Docket No. 13, Att. 4).

7.     On July 7, 2014, Ms. Taylor filed this lawsuit, later amending her pleading on September 11, 2014.  *See* Compl. (Docket No. 1); Am. Compl. (Docket No. 13).  Through her Amended Complaint, Ms. Taylor "request[ed] that the Court issue an injunction directing Defendant David E. Brasuell, as Administrator of [Veterans Services], in his official capacity, approve her Application for Pre-Registration to be interred along with her deceased spouse at the Idaho State Veterans Cemetery."  Am. Compl., ¶ 1 (Docket No. 13); *see also id*. at ¶ VI(A), p. 14.[3]

8.     On October 7, 2014, the Ninth Circuit affirmed Judge Dale's decision in *Latta*, reasoning:

Idaho['s] . . . marriage laws, by preventing same-sex couples from marrying and refusing to recognize same-sex marriages celebrated elsewhere, impose profound legal, financial, social and psychic harms on numerous citizens of those states.  These harms are not inflicted on opposite-sex couples, who may, if they wish, enjoy the rights and assume the responsibilities of marriage. Laws that treat people differently based on sexual orientation are unconstitutional unless a "legitimate purpose . . . overcome[s]" the injury inflicted by the law on lesbians and gays and their families. . . . .  Because

---

[3] In addition to the requested injunctive relief,  Ms. Taylor's Amended Complaint also contained these "claim[s] for relief":  (1) "Idaho's Failure to Recognize the Marriage of Plaintiff Deprives Her of Due Process of Law in Violation of the Fourteenth Amendment to the United States Constitution"; and (2) "Idaho's Failure to Recognize the Plaintiff's [Marriage] Denies Her Equal Protection of the Laws in violation of the Fourteenth Amendment to the United States Constitution."  Am. Compl., pp. 9, 12, & 13 (Docket No. 13).

**MEMORANDUM DECISION AND ORDER - 4**

> defendants have failed to demonstrate that these laws further any legitimate
> purpose, they unjustifiably discriminate on the basis of sexual orientation, and
> are in violation of the Equal Protection Clause.

*Latta v. Otter*, 771 F.3d 456, 476 (9th Cir. 2014) (internal citations omitted).

9.      Upon application by *Latta's* defendants, on October 8, 2014, the Supreme Court temporarily stayed the Ninth Circuit's mandate in *Latta*; that same day, the Ninth Circuit withdrew its mandate, pending further order of the Ninth Circuit or the Supreme Court.

10.      On October 10, 2014, the Supreme Court formally denied the application for stay, effectively vacating its October 8, 2014 order staying the proceedings; that same day, *Latta's* plaintiffs moved for dissolution of the May 20, 2014 stay pending appeal.

11.      On October 13, 2014, the Ninth Circuit granted the *Latta* plaintiffs' motion to dissolve the May 20, 2014 stay pending appeal, effective at 9 a.m. on October 15, 2014.

12.      On October 15, 2014, the Ninth Circuit found that the *Latta* defendants were no longer entitled to a stay of this Court's May 13, 2014 order.  *See Latta v. Otter*, 771 F.3d 496 (9th Cir. 2014) (finding support, in part, on Supreme Court's October 6, 2014 decision to deny review of seven petitions arising from lower court decisions striking down bans on same-sex marriage in Indiana, Wisconsin, Utah, Oklahoma, and Virginia).  Even so, the Ninth Circuit afforded the *Latta* defendants a second opportunity to obtain an emergency stay from the Supreme Court.  *Id*. at 501.[4]

13.      On October 21, 2014, the *Latta* defendants filed a petition for rehearing en banc with the Ninth Circuit.

---

[4]  It does not appear that the *Latta* defendants ever attempted to obtain a second emergency stay from the Supreme Court.

**MEMORANDUM DECISION AND ORDER - 5**

14.     On October 28, 2014, Ms. Mixner's remains were interred at the Idaho State Veterans Cemetery.  *See* Earp Decl., ¶ 5 (Docket No. 18, Att. 2) (stating that "Idaho's marriage laws recently changed as a result of developments in the *Latta v. Otter* case" which "permitted Veterans Services to reconsider Ms. Taylor's interment application for Ms. Mixner.").

15.     On October 29, 2014, Defendant David Brasuell, the Administrator of Veterans Services, filed the at-issue Motion to Dismiss this case, arguing that Ms. Taylor's claims are now moot, owing to the fact that Ms. Mixner's remains are now interred at the Idaho State Veterans Cemetery.  *See* Mem. in Supp. of MTD, pp. 1-2 (Docket No. 18, Att. 1) ("When [P]laintiff originally filed this action, Idaho law prohibited recognition of same-sex marriages.  That law has now changed to permit recognition of [P]laintiff's marriage.  As a result, the Idaho Division of Veterans Services has granted [P]laintiff's request for interment of her spouse's remains at the Idaho State Veterans Cemetery.  Thus, [P]laintiff has received all the relief requested in her complaint.").

16.     Also on October 29, 2014, Ms. Taylor filed the at-issue Motion for Summary Judgment in this action, arguing that, while the placement of Ms. Mixner's remains at the Idaho Veterans Cemetery is "a first step toward the relief sought in this action, . . . [it] do[es] not provide complete relief . . ."  Mem. in Supp. of MSJ, p. 3 (Docket No. 19, Att. 1).  Specifically, Ms. Taylor contends that she "is entitled to a judgment to determine the parties' rights and obligations and to prevent Defendant from changing course in the future and repeating his unconstitutional rejection of her burial request."  *Id*. at p. 5.  According to Ms. Taylor, "[o]nly a final order granting summary judgment can protect [her] interests and constitutional rights and [e]nsure that upon her death, her remains are in fact interred with her spouse."  *Id*.

**MEMORANDUM DECISION AND ORDER - 6**

17.     Shortly thereafter, on November 6, 2014, the United States Court of Appeals for the Sixth Circuit reversed five consolidated district court cases upholding challenges to marriage restrictions on same-sex couples in four Sixth Circuit states. *See DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014) (holding that involved states have no constitutional obligation to license same-sex marriages or to recognize same-sex marriages performed out-of-state).[5]  Soon thereafter, the plaintiffs in the underlying district court cases submitted petitions for certiorari, requesting that the Supreme Court review the Sixth Circuit's decision.

18.     On December 30, 2014 and January 1, 2015, the *Latta* defendants submitted petitions for certiorari, requesting that the Supreme Court review the Ninth Circuit's October 7, 2014 judgment affirming Judge Dale's May 13, 2014 decision in *Latta*.

19.     On January 9, 2015, the Ninth Circuit denied the *Latta* defendants' petition for rehearing en banc.

20.     On January 16, 2015, the Supreme Court granted review of the Sixth Circuit's November 6, 2014 decision in *DeBoer*, limited to these questions: (1) whether the Fourteenth Amendment requires a state to license a marriage between two people of the same sex; and (2) whether the Fourteenth Amendment requires a state to recognize a same-sex marriage licensed and performed in a state which does grant that right.

21.     On January 21, 2015, the Ninth Circuit issued a mandate, stating that its October 7, 2014 judgment affirming Judge Dale's decision in *Latta* became effective that same date.

---

[5]  Michigan, Kentucky, Ohio, and Tennessee defined marriage as a union between one man and one woman.  The plaintiffs in those cases (two cases from Ohio) filed suits in federal district courts in their home states, claiming that the defendant state officials violated the Fourteenth Amendment to the United States Constitution by denying them the right to marry or to have marriages lawfully performed in another state given full recognition.  Each district court ruled in the plaintiffs' favor, but, on the defendants' appeal, the Sixth Circuit consolidated the cases and reversed the judgments of the district courts.

**MEMORANDUM DECISION AND ORDER - 7**

22.     On June 26, 2015, the Supreme Court reversed the Sixth Circuit in *DeBoer*,

holding that the Fourteenth Amendment requires a state to license a marriage between same-sex

couples and to recognize a same-sex marriage lawfully licensed and performed out-of-state.  *See*

*Obergefell v. Hodges*, 2015 WL 2473451 (2015).  In doing so, Justice Kennedy, writing for the

majority, concluded:

> No union is more profound than marriage, for it embodies the highest ideals
> of love, fidelity, devotion, sacrifice, and family.  In forming a marital union,
> two people become something greater than once they were.  As some of the
> petitioners in these cases demonstrate, marriage embodies a love that may
> endure even past death.  It would misunderstand these men and women to say
> they disrespect the idea of marriage.  Their plea is that they do respect it,
> respect it so deeply that they seek to find its fulfillment for themselves.  Their
> hope is not to be condemned to live in loneliness, excluded from one of
> civilization's oldest institutions.  They ask for equal dignity in the eyes of the
> law.  The Constitution grants them that right.

*Id*. at *23.

23.     On June 30, 2015, consistent with its holding in *Obergefell*, the Supreme Court

denied the *Latta* defendants' December 30, 2014 and January 1, 2015 petitions for certiorari.

## II.  DISCUSSION

Article III of the Constitution limits federal courts to the adjudication of actual, ongoing

cases or controversies between litigants.  *See* U.S. Const. Art. III, § 2, cl. 1.  There is no question

that, when Ms. Taylor originally brought this action on July 7, 2014, a genuine dispute existed

between the parties – that is, whether Ms. Taylor, as a veteran, could be interred at the Idaho

State Veterans Cemetery along with her same-sex spouse, Ms. Mixner.

However, if a "live" controversy ceases to exist because of changed circumstances after

the complaint is filed, the claim is rendered moot and no longer justiciable.  *See Am. Civil*

*Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006); *see also Am. Rivers v.*

**MEMORANDUM DECISION AND ORDER - 8**

*Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("A claim is moot if it has lost

its character as a present, live controversy. . . . .  If an event occurs that prevents the court from

granting effective relief, the claim is moot and must be dismissed."); *Garcia v. Lawn*, 805 F.2d

1400, 1403 (9th Cir. 1986) ("[T]he question is not whether the precise relief sought at the time

[the case] was filed is still available.  The question is whether there can be any effective relief.").

Relevant here, when an administrative agency has performed the action sought by a plaintiff in

litigation, a federal court generally "lacks the ability to grant effective relief," and the claim is

moot.  *See Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).  Defendant Brasuell

moves to dismiss Ms. Taylor's claims on such authority, arguing that, "[b]ecause Ms. Taylor has

received all the relief requested in her amended complaint – internment of Ms. Mixner's remains

at the Veterans Cemetery – her case is now moot."  Mem. in Supp. of MTD, p. 4 (Docket No. 18,

Att. 1).  The "party moving for dismissal on mootness grounds bears a heavy burden."  *In re*

*Thorpe Insulation Co.*, 677 F.3d 869, 879 (9th Cir. 2012) (citation omitted).

        Mr. Brasuell's argument in this respect identifies certain touchstones of possible

mootness to Ms. Taylor's claims, but the fact that Ms. Mixner's remains are now interred at the

Idaho State Veterans Cemetery does not ipso facto compel a dismissal of the entire action.  It is

true that Ms. Taylor's Amended Complaint requests that Ms. Mixner's remains be interred at the

Idaho State Veterans Cemetery.  But to conclude that the Amended Complaint seeks *only* such

relief overlooks Ms. Taylor's overarching motivation – that, once she dies, her remains will be

forever interred with Ms. Mixner's remains at the Idaho State Veterans Cemetery.  On this point,

the Amended Complaint alleges in no uncertain terms:

> Ms. Taylor brings this suit pursuant to 42 U.S.C. § 1983 for injunctive relief
> against the Defendant.  *Specifically, Ms. Taylor seeks a permanent injunction*

**MEMORANDUM DECISION AND ORDER - 9**

> *directing Defendant to approve her Pre-Registration Application to be*
> *interred upon her death with her deceased spouse, Ms. Mixner, and to direct*
> *him to approve, upon Ms. Taylor's upon death, her interment, together with*
> *her spouse at the Idaho State Veterans Cemetery.* . . . .

> Idaho's refusal to respect Ms. Taylor's [marriage to Ms. Mixner] subjects her
> to an inferior "second class" status as an Idahoan relative to the rest of the
> community.  It denies her even the basic dignity of having her burial wishes,
> and the wishes of her spouse, respected by the State of Idaho, solely because
> of its refusal to recognize their lawful marriage.  *Idaho has denied Ms. Taylor*
> *the comfort and dignity of knowing that she will be able to honor her promise*
> *to her spouse.  Namely, that upon Ms. Taylor's death, their remains will be*
> *comingled for burial, so that they may rest together in peace.  This has caused,*
> *and continues to cause Ms. Taylor great pain and anguish.* . . . .

> *WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:*
> *Directing Defendant David E. Brasuell, as Administrator of the Idaho Division*
> *of Veterans Services, in his official capacity, to approve her Application for*
> *Pre-Registration to be interred along with her deceased spouse at the Idaho*
> *State Veterans Cemetery, and to approve Ms. Taylor's interment upon her*
> *death together with her spouse.*

Am. Compl., ¶¶ 8, 25, VI(A) (Docket No. 13) (capitalization in original, italics added).  That Ms.

Taylor is entitled to be eventually buried at the Idaho State Veterans Cemetery, and Ms.

Mixner's remains are currently interred there, presumably is of present comfort to Ms. Taylor

and to the respective families and loved ones of Ms. Taylor and Ms. Mixner.  But such present

comfort is not enough when considering the scope of relief actually sought within Ms. Taylor's

Amended Complaint.

To be clear, through this action, Ms. Taylor demands that, upon her death, she and Ms.

Mixner be interred together in perpetuity at the Idaho State Veterans Cemetery.  Mr. Brasuell's

actions since Ms. Taylor first initiated this proceeding should be credited; however they fall

short of providing certain assurance to Ms. Taylor that she and Ms. Mixner will be guaranteed a

reunification in death by virtue of their joint interment at the Idaho State Veterans Cemetery.

**MEMORANDUM DECISION AND ORDER - 10**

The final denouements of the *Latta* and *Obergefell* cases entitle her to such an assurance.[6]  This relief remains outstanding to Ms. Taylor and she can seek such relief as part of this action's adjudication and eventual resolution.  As a result, it cannot be said that the interment of Ms. Mixner's remains at the Idaho State Veterans Cemetery moots the balance of Ms. Taylor's case.  Mr. Brasuell's Motion to Dismiss is accordingly denied.

Separately, even when assuming this case to be otherwise moot, courts have long recognized a "voluntary cessation" exception to mootness.[7]  Under this doctrine, the mere

---

[6]  This is particularly the case when considering that Ms. Taylor currently faces several significant health challenges.  *See* Taylor Decl., ¶¶ 4 & 7 (Docket No. 19, Att. 3) (discussing Ms. Taylor's chronic health issues, including cardiovascular disease and chronic obstructive pulmonary disease).  Absent an order from this Court, Ms. Taylor arguably has no remedy if she passes away and Veterans Services proceeds to do something different than what they have represented they will do (inter both Ms. Taylor's and Ms. Mixner's remains together at the Idaho State Veterans Cemetery).  *See* Opp. to MTD, pp. 7-9 (Docket No. 20) (". . . Ms. Taylor needs relief now, during her lifetime, because under Idaho law, civil rights claims brought under 42 U.S.C. § 1983 abate upon death. . . . .  Even though *Latta v. Otter* will be binding precedent in Idaho, there will be no one with standing to enforce it against Defendant with respect to Defendant's obligation to permit the deceased spouses to be interred together in the Veteran's Cemetery in perpetuity. . . . .  Because civil rights actions abate upon death under Idaho law, that is the only way to ensure that Ms. Taylor can obtain the relief she has requested, including the incalculable peace of mind and security of knowing that Defendant must honor her request that she and her deceased spouse will be interred together after her death.").

[7]  Other recognized exceptions to the mootness doctrine include (1) collateral legal consequences, (2) wrongs capable of repetition yet evading review, and (3) class actions where the named party ceases to represent the class.  *See Pilate v. Burrell*, 415 F.3d 994, 998 (9th Cir. 2005).  In her opposition to Mr. Brasuell's Motion to Dismiss, Ms. Taylor argues that "[t]he possibility that [Mr. Brasuell] could renew his discrimination against [her] after her death," represents the exception of a "wrong capable of repetition, yet evading review."  *See* Opp. to MTD, pp. 8-9 (Docket No. 20).  This is a misapplication of the exception to the facts of this case.  That exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal citation omitted).  It is a narrow exception and applies only in exceptional situations.  *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).  It "is concerned not with particular lawsuits, but with classes of cases that, absent the

**MEMORANDUM DECISION AND ORDER - 11**

cessation of a challenged practice (in this case, Veterans Services' reversal of its original denial

of the Application vis á vis Ms. Mixner's remains) "'does not deprive a federal court of its power

to determine the legality of the practice" unless the party alleging mootness can show that the

"allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v.*

*Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  Without the exception, "'the courts would be

compelled to leave [t]he defendant . . . free to return to his old ways.'" *Porter v. Bowen*, 496

F.3d 1009, 1017 (9th Cir. 2007) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*,

393 U.S. 199, 203 (1968)).

      The standard for determining whether a case has been mooted by a defendant's voluntary

conduct is "stringent."  *Laidlaw*, 528 U.S. at 189.  "A case might become moot if subsequent

events made it absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur."  *Concentrated Phosphate*, 393 U.S. at 203.  "The 'heavy burden of

persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up

again lies with the party asserting mootness."  *Laidlaw*, 528 U.S. at 189 (quoting *Concentrated*

*Phosphate*, 393 U.S. at 203).

---

exception, would *always* evade judicial review."  *Protectionmarriage.com-Yes on 8 v. Bowen*,
752 F.3d 827, 836 (9th Cir. 2014).  Election cases involving election laws that would inherently
take more time to resolve than the election cycle permits are the typical sorts of cases invoking
this exception.  *See, e.g.*, *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases
often fall within this exception, because the inherently brief duration of an election is almost
invariably too short to enable full litigation on the merits.").  In contrast, here, there is no actual
challenged action (let alone challenged action of a limited duration) – only the possibility of
conduct that could/would be challenged and, even if so challenged, by someone other than Ms.
Taylor.  In the Court's mind, these arguments more aptly speak to the "voluntary cessation"
exception, not the "wrong capable of repetition, yet evading review" exception.  Indeed, Ms.
Taylor relies on the latter (and not the former) in her Motion for Summary Judgment.  *See* Mem.
in Supp. of MSJ, pp. 4-5 (Docket No. 19, Att. 1).

**MEMORANDUM DECISION AND ORDER - 12**

In further support of his argument that this case is moot, Mr. Brasuell contends that Ms. Taylor's concern about possible future changes are wholly unfounded and therefore cannot create the requisite case or controversy establishing this Court's jurisdiction. *See* Opp. to MSJ, pp. 1 & 5-6 (Docket No. 22) ("There is no valid factual basis for this alleged concern. Indeed, Veterans Services approved Plaintiff's request to be interred at the Cemetery before she filed suit, and its commitment on that point has never wavered. Plaintiff's alleged concern about possible future harms is far too speculative to create any justiciable controversy."). Although persuasive on the issue of a litigant's standing to bring a claim in the first instance,[8] "[t]he Supreme Court has emphasized that the doctrine of mootness is more flexible than other strands of justiciability doctrine." *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003). Standing and mootness are not interchangeable inquiries; rather, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *See Laidlaw*, 528 U.S. at 190.

Ms. Taylor raises concerns that Veterans Services may in fact perform an about-face and renege on its apparent approval to inter Ms. Taylor's eventual remains with Mixner's currently-interred remains at the Idaho State Veterans Cemetery. She points out that, at nearly every turn, Idaho state officials sought to overturn *Latta* and restore Idaho's same-sex marriage ban. *See* Reply in Supp. of MSJ, pp. 3-5 & 7 (Docket No. 23) ("[I]t remains the State of Idaho's position that the *Latta* decision is erroneous and that the state laws struck down in that case are constitutional and enforceable, *which means it is not only likely, but virtually certain*, that

---

[8] Mr. Brasuell's reliance on *Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014) reflects as much. *See* Opp. to MSJ, p. 6 (Docket No. 22). In *Coons*, the Ninth Circuit was addressing the doctrine of ripeness – an inquiry often treated under the rubric of standing. *See Coons*, 762 F.3d at 897. *Coons* did not deal with the mootness doctrine.

**MEMORANDUM DECISION AND ORDER - 13**

Defendant will again enforce the marriage ban if given the opportunity to do so.") (emphasis

added).  This is true – even *after* Veterans Services interred Ms. Mixner's remains at the Idaho

State Veterans Cemetery, *Latta* was in the cross-hairs of Idaho's legal fight against same-sex

marriages.  *See,* e.g., *supra* (filing petition for rehearing en banc with Ninth Circuit[9] and

submitting petitions for certiorari on December 30, 2014 and January 1, 2015).

There is no question but that those on both sides of the argument raised in the *Latta* and

*Obergefell* cases have firm and deeply-felt convictions about the "rightness" of their particular

position.  Further, the landscape left by *Latta* and *Obergefell* is still very warm to the touch.[10]

However, the remaining issues in this case must be decided against the judicial finish line of

those cases, not against the arguments raised along the way.  In that space, this Court is not

persuaded that Veterans Services, via Mr. Brasuell, has borne its "formidable" burden of

establishing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably

be expected to recur."  *Concentrated Phosphate*, 393 U.S. at 203.  Perhaps, even without an

---

[9]  Technically, this preceded Ms. Mixner's interment at the Idaho State Veterans Cemetery by seven days.  *See supra*.  Regardless, the petition was not denied until approximately three months later, during which time challenges to *Latta's* mandate continued.  *See id*.

[10]  The Court takes judicial notice that, on June 26, 2015, Idaho's Governor, C.L. "Butch" Otter, issued the following news release concerning *Obergefell*, expressing his own disappointment in the decision:

> Today's decision is truly disappointing for states, including Idaho, where the people chose to define marriage for themselves as between one man and one woman.  I have maintained from the very beginning that it should be the prerogative of the states – not the courts – to determine whether same-sex marriage is consistent with the values, character, and moral fabric of that particular state.  That is why it was especially troubling that the Court treated the 10th Amendment as a footnote, instead of a guiding principle our founding fathers intended.

News Release, at http://www.gov.idaho.gov/mediacenter/press/pr2015/2 Feb/pr_40.html

**MEMORANDUM DECISION AND ORDER - 14**

enforceable order ensuring that Ms. Taylor and Ms. Mixner will be permanently interred

together at the Idaho Veterans Cemetery, they would nonetheless be so laid in perpetuity.  But

notwithstanding the rulings in *Latta* and *Obergefell*, a future director at Veterans Services or the

Idaho State Veterans Cemetery (or some other applicable state actor) may come to view his or

her role as being responsible for deciding what is/is not constitutional under the law on matters

that may impact Ms. Taylor's claimed right to be interred there with her same-sex spouse.  It is

not unusual for legal precedent – even Supreme Court decisions – to be tested in such ways over

time to "settle the pond" on novel and evolving issues.  Dismissal on the grounds of mootness

would be justified only if this possibility was categorically foreclosed or, said another way, if it

was absolutely clear that Ms. Taylor no longer had any need of the judicial protection that she

seeks.  The record now before the Court does not support such a conclusion.[11]  For this separate

reason, Mr. Brasuell's Motion to Dismiss is denied.

---

[11]  Mr. Brasuell reasonably contends that the "voluntary cessation" exception to the
mootness doctrine cannot apply to save Ms. Taylor's case because, in reality, "Veterans Services
did not voluntarily choose to change its position regarding Ms. Taylor's request to have Ms.
Mixner's remains interred at the [Idaho State Veterans] Cemetery" but, "[i]nstead, it permitted
Ms. Mixner's interment because the Ninth Circuit's decision in *Latta* changed the law
controlling Veterans Decisions' decisions."  Opp. to MSJ, p. 7 (Docket No. 22); *see also id.* at
pp. 6-8 (citing cases where changes in law are "usually" enough to render case moot); *Sea-Land
Serv., Inc. v. Int'l Longshoremen's and Warehousemen's Union, Locals 13, 63, and 94*, 939 F.2d
866, 870 (9th Cir. 1991) ("'[L]egally compelled' cessation of such conduct is not 'voluntary' for
purposes of this exception to the mootness doctrine.").  However, cases following this line of
reasoning do not apply neatly here.  In those cases, the plaintiffs would be able to bring litigation
to vindicate their rights under controlling precedent.  In contrast, here,  Ms. Taylor's requested
remedy addresses a unique temporal situation – one that coalesces only after she dies (interring
her remains with those of Ms. Mixner's in the Idaho State Veterans Cemetery).  But if Ms.
Taylor – already in an infirm state – dies without first securing the requested order/judgment, she
could be without a remedy when understanding that her section 1983 claims may cease upon her
death.  *See supra*.  This Court is reluctant to put Ms. Taylor or any similarly-situated litigant in
such a predicament by finding as a matter of law that her claim is moot.  Regardless, as stated
earlier in this Memorandum Decision and Order, effective relief remains available to Ms. Taylor.
*See id.*

**MEMORANDUM DECISION AND ORDER - 15**

With Ms. Taylor's claims still intact, the Court turns to Ms. Taylor's Motion for Summary Judgment.  There is no dispute that Ms. Taylor and Ms. Mixner were legally married in California in 2008.  Now, with *Latta* and *Obergefell* providing the template upon which the states must recognize same-sex marriages, there is no reason for Ms. Taylor to wait longer.  Ms. Taylor is entitled to have the assurance that there is a court order in place requiring that what she has a right to have happen if she were to pass away today, will happen when she does pass away.  That is the relief she seeks and, equally importantly, her right.

Therefore, upon her death, Ms. Taylor shall be interred with her deceased spouse, Ms. Mixner, at the Idaho State Veterans Cemetery.  Moreover, the State of Idaho, its political subdivisions, and its officers, employees, and agents, are enjoined from enforcing any constitutional provision, statute, regulation, or policy preventing qualified same-sex couples from being buried or interred together at the Idaho State Veterans Cemetery which, if the spouses were not of the same sex, would be otherwise valid under the laws of the state.  Such remedies fall underneath the legal umbrella of *Latta's* and *Obergefell's* holdings.  Ms. Taylor's Motion for Summary Judgment is accordingly granted.

## III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1.      Defendant's Motion to Dismiss (Docket No. 18) is DENIED; and

2.      Plaintiff's Motion for Summary Judgment (Docket No. 19) is GRANTED.  Upon Ms. Taylor's death, Defendant shall approve and facilitate her interment, together with her spouse, Ms. Mixner, at the Idaho State Veterans Cemetery.

**MEMORANDUM DECISION AND ORDER - 16**

3.      Within 10 days of this Memorandum Decision and Order, Plaintiff shall submit a proposed form of judgment for the undersigned's consideration.



DATED:  **July 9, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**